

# Advantage Funding
**Transportation Financing & Leasing Specialists**

3 Dakota Drive, Suite 210 - Lake Success, NY 11042

Phone (718) 392-1300  Fax (718)-392-3933

## MASTER PROMISSORY NOTE AND SECURITY AGREEMENT

XXXXXX -41007

**THIS MASTER PROMISSORY NOTE AND SECURITY AGREEMENT,** the "Agreement", entered into this July 25, 2016 by and between Advantage Funding Commercial Capital Corp., a New York corporation having its principal executive office at 3 Dakota Drive, Lake Success, NY 11042, or its assigns, hereinafter referred to as "Creditor" and LGE ORGANIC LLC, a South Carolina LLC (State of Domicile and Type of Business Organization) having its principal office 3 MILFORD STREET  CHARLESTON, SC 29405 hereinafter referred to as "Obligor".

## ARTICLE 1 – PAYMENT AND SECURITY INTEREST

| Year/Make/Model/Serial Number | 2017 UTILITY VS2RA W/ THERMO KING REFRIGERATION UNIT S/N: 6001207102 Serial Number - 1UYVS2534H6952329 |
| Year/Make/Model/Serial Number | 2017 UTILITY VS2RA W/ THERMO KING REFRIGERATION UNIT S/N: 6001208491 Serial Number - 1UYVS2530H6952330 |

Mailing address:   PO Box 177   Hiram, GA 30141

| A.  PAYMENTS | B.  TERM OF AGREEMENT | C.  COMMENCEMENT DATE |
|---|---|---|
| 71 Monthly Payments of $2,370.00 and a Final Payment of $0.00 | 72 Months<br><br>71 Months Remaining | August   15 , 2016 |

| D.  MATURITY DATE | E.  INITIAL PAYMENT | F.  ADVANCE |
|---|---|---|
| July   15, 2022 | Initial Payment of:  $3,065.00<br>Shall be applied to:<br>First Payment        $2,370.00<br>Last Payment        $0.00<br>Acquisition Fee    $695.00 | Sale Price:          $132,872.00<br>Down Payment:   $0.00<br>Sales Tax:           $0.00<br>Advance:             $132,872.00<br><br>X _____ Initials |

**G. Promise to Pay.** Obligor promises to pay to the order of Creditor the principal sum of $132,872.00 ("Advance") with interest thereon prior to an Event of Default, as set forth herein. Obligor shall make the monthly payments stated in Article 1A above or in any Exhibit A executed on or after the date of this Agreement, plus any final payment stated in Article 1A above or in any Exhibit A executed after the date of this Agreement,  commencing on the Commencement Date stated in Article 1C above or, with respect to Vehicle(s) and/or Equipment described above or in any Exhibit A executed after the date of this Agreement, the date stated in that Exhibit A, and continuing on the same day of each month thereafter with no right of prepayment except that if at least 12 monthly payments have been made as scheduled (and not earlier or later than scheduled), and no event of default under this Agreement or any other agreement between Obligor and Creditor or its affiliates has occurred, Obligor may prepay if the additional prepayment penalty under Article 2N ("Prepayment Penalty") is first paid to Creditor.  The final payment of all outstanding principal, together with all accrued but unpaid interest and all fees, cost, expenses and other sums which may become due hereunder (collectively, the "Indebtedness") shall be

Page 1 of 12

## EXHIBIT 1

due and payable on the Maturity Date stated in Article1D or, if any Exhibit A is executed after the date of this Agreement, the date set forth in that Exhibit A with respect to payments for Vehicle(s) and/or Equipment described in that Exhibit A. Notwithstanding the foregoing, with the exception of the security deposit described below in Article 6, payments shall not commence until at least 30 days from the Commencement Date. Payment of all periodic installments and other amounts payable hereunder shall be made to Creditor at its above stated address, or as it shall otherwise designate in writing.

H. **Security Interest.** The Obligor hereby grants to Creditor a first priority security interest in the following collateral: (a) Vehicle(s) and/or Equipment described above or in the attached and any subsequent Exhibit A signed by the parties; (b) Equipment described above or in the attached and any subsequent Exhibit A signed by the parties (c) any additional collateral described above or in the attached or any subsequent Exhibit A signed by the parties, (d) all cash and non-cash proceeds and products of the foregoing Vehicle(s) and/or Equipment, and additional collateral, all proceeds of insurance thereon, all accessions thereto, all substitutions therefor and all additions thereto (said property, proceeds, products, substitutions, accessions and additions being herein called "Collateral"). Obligor confirms the Collateral will be used solely for commercial or business purposes (and not for consumer, personal, family or household purposes), as security for the repayment by Obligor to Creditor of the amounts specified in the Advance (and including  any amounts specified in any attached or subsequent Exhibit A or promissory note which may be executed by Obligor specifically relating to this Agreement) and the performance by Obligor of all of its other obligations pursuant to the terms and conditions of this Agreement. Obligor grants a first priority purchase money security interest in any Collateral purchased with the Advance. The Advance will be used solely for commercial or business purposes and consumer protections will not apply to the transaction described in this Agreement.

I. **Term.** The Term of this Agreement shall be the number of months stated in Article1B above, commencing on the date stated in Article1C above.  Obligor authorizes Creditor to insert such Commencement Date herein.

## ARTICLE 2- LOAN PROVISIONS

A. **Delivery of Vehicle(s) and/or Equipment.** Obligor shall accept the Vehicle(s) and/or Equipment upon its delivery and authorizes Creditor to insert herein the serial numbers and any additional description of the items of Vehicle(s) and/or Equipment so delivered.  If Obligor wrongfully refuses delivery of any item of Vehicle(s) and/or Equipment for any reason whatsoever, then and in that event, Obligor agrees to indemnify and hold Creditor harmless from and against, and agrees to protect and (at Creditor's option) to defend Creditor at Obligor's sole expense against (with counsel acceptable to Creditor), any claim or liability and damage by Seller with reference to such item of Vehicle(s) and/or Equipment.

B. **Control of Vehicle(s) and/or Equipment.** The Vehicle(s) and/or Equipment shall be at all times under the sole and absolute control of Obligor, subject to the rights of Creditor as provided herein.

C. **Maintenance.** Obligor shall, at its own expense, keep and maintain the Vehicle(s) and/or Equipment in good operating condition and working order, and in compliance with all applicable regulations, including all repairs and maintenance, mechanical or otherwise occasioned by normal use, accident or casualty. In the event of accident or casualty loss, Obligor shall notify Creditor within 24 hours of such accident or casualty and disclose the extent of damage and proposed method of repair. Creditor may, at its option, in the event of an accident, require repairs according to manufacturer specifications facilities designated by Creditor. Further, Obligor shall perform all preventive maintenance required to insure full validation of any manufacturer's warranties, if applicable. Obligor shall maintain and make available all records required by applicable law.  Obligor will comply with all manufacturer recall notices for Vehicle(s) and/or Equipment.

**D. Inspection.** Creditor is hereby given the right, but not the duty, upon reasonable notice to Obligor and during its regular business hours, to inspect the Vehicle(s) and/or Equipment on the premises of Obligor, or wherever located. In the event that Creditor determines that Obligor is not maintaining the Vehicle(s) and/or Equipment in good operating condition, or does not make the Vehicle(s) and/or Equipment available for inspection, Creditor shall give Obligor written notice of its determination, and Obligor shall have fourteen (14) days to cure same. Failure to cure by Obligor shall be deemed an event of default hereunder. Any costs or expenses incurred by Creditor in connection with this paragraph shall be the obligation of the Obligor, payable within thirty (30) days of invoice. Any amounts due and owing hereunder shall constitute a part of this Agreement and be incorporated herein and shall be secured by the Vehicle(s) and/or Equipment purchased herein. Any default by Obligor in the payment thereof when due, shall entitle Creditor to utilize all available remedies for breach hereunder, including, but not be limited to, self-help recovery of possession. Obligor agrees to keep Creditor informed at all times of Obligor's principal place of business and the principal garage and location of the Vehicle(s) and/or Equipment.

**E. WARRANTIES. OBLIGOR REPRESENTS THAT IT HAS SELECTED THE VEHICLE(S) AND/OR EQUIPMENT AND OBLIGOR AGREES THAT CREDITOR HAS NOT MADE AND MAKES NO REPRESENTATIONS OR WARRANTIES OF ANY KIND OR NATURE, DIRECTLY OR INDIRECTLY, EXPRESS OR IMPLIED, AS TO ANY MATTER WHATSOEVER, INCLUDING, WITHOUT LIMITATION, TITLE TO OR THE SUITABILITY OF THE VEHICLE(S) AND/OR EQUIPMENT, ITS DURABILITY, ITS FITNESS FOR ANY PARTICULAR PURPOSE, ITS MERCHANTABILITY, ITS CONDITION, ITS CAPACITY, ITS OPERATION, ITS PERFORMANCE, ITS DESIGN, ITS MATERIALS, ITS WORKMANSHIP AND/OR ITS QUALITY.** No representation or warranty as to the Vehicle(s) and/or Equipment or any other matter by the Vehicle(s) and/or Equipment seller shall be binding on Creditor nor shall the breach of such relieve Obligor of, or in any way affect, any of Obligor's Obligations to Creditor or Creditor's assignee as set forth herein. Obligor agrees to look solely to the manufacturer for any claim arising from any defect, breach of warranty, failure or delay in delivery, misdelivery, or inability to use the Vehicle(s) and/or Equipment for any reason whatsoever and Obligor's obligations to Creditor hereunder shall not in any manner be affected thereby, including (without limitations) Obligor's obligations to pay Creditor all periodic installments and other amounts payable under this Agreement.

**F. Consequential Damages.** Creditor and Creditor's assignee shall not be liable to Obligor or any third party for any loss, damage, injury or expense of any kind or nature caused directly or indirectly by the Vehicle(s) and/or Equipment or the use or maintenance thereof or any defect therein, the failure or operation thereof, or any repair, service or adjustment thereto, or by any delay or failure to provide any thereof or by any interruption or service or loss of use thereof or for any loss of business or damage whatsoever and howsoever caused, including (without limitation) any loss of anticipatory profits or any other indirect, special or consequential damages.

**G. Tax Treatment.** Creditor makes no warranty as to the treatment of this Agreement for tax or accounting purposes, or as to the compliance of the Vehicle(s) and/or Equipment with applicable government regulations or requirements, which shall be the sole responsibility of the Vehicle(s) and/or Equipment seller and/or manufacturer of the Vehicle(s) and/or Equipment.

**H. Credit Application and Obligor's Financial Information.** Obligor warrants that the application, statements and credit or financial information submitted by it to Creditor are true and correct and made to induce Creditor to enter into this Agreement and to finance Obligor's purchase of the Vehicle(s) and/or Equipment. Obligor agrees to provide to Creditor audited annual financial statements and such other interim financial statements as Creditor may request.

**I. Authorization; Conflicts.** Obligor warrants (a) that this Agreement has been duly authorized, executed and delivered by Obligor, and constitutes the legal, valid and binding obligation of Obligor, enforceable in accordance with its terms, and (b) that no provision of this Agreement (i) is inconsistent with Obligor's charter, by-laws, or any loan or credit agreement or other instrument to which Obligor is a party or by which Obligor or its property may be bound or affected or (ii) conflicts with any applicable law, rule or regulation, and (c) that no claim, action or suit is pending or has been threatened that would adversely affect Obligor's ability to enter into or perform its obligations under this Agreement.

**J. Location and Operation.** Obligor shall keep the Vehicle(s) and/or Equipment within the United States at the above-stated "Location of Vehicle(s) and/or Equipment" or, if none is specified, at Obligor's above-stated address within the United States, and Obligor shall not remove any of the Vehicle(s) and/or Equipment therefrom for more than thirty (30) days without Creditor's prior written consent. Obligor shall use the Vehicle(s) and/or Equipment in a careful manner and shall at all times, at its sole expense, keep the Vehicle(s) and/or Equipment in good operating condition, repair and appearance and comply with all laws, ordinances, regulations or requirements of any governmental authority, official, board or department relating to its installation, possession, use or maintenance.  Obligor shall not make any alterations, additions, or improvements to the Vehicle(s) and/or Equipment which are not readily removable without causing damage to or reducing the value of the Vehicle(s) and/or Equipment.

**K. Assignment. OBLIGOR SHALL NOT ASSIGN, PLEDGE, MORTGAGE OR OTHERWISE TRANSFER OR ENCUMBER ANY OF ITS RIGHTS UNDER THIS AGREEMENT OR IN THE VEHICLE(S) AND/OR EQUIPMENT OR ANY PART THEREOF, NOR SUBLET ANY PART THEREOF, NOR PERMIT ITS USE BY ANYONE OTHER THAN OBLIGOR AND ITS REGULAR EMPLOYEES, WITHOUT CREDITOR'S PRIOR WRITTEN CONSENT.  ANY SUCH PURPORTED TRANSFER, ASSIGNMENT OR OTHER ACTION WITHOUT CREDITOR'S WRITTEN CONSENT SHALL BE VOID.**

Creditor may, without notice, transfer or assign this Agreement or any interest herein and may mortgage, pledge, encumber or transfer any of its right or interest in and to this Agreement and/or the Vehicle(s) and/or Equipment or any part thereof and, without limitation, each assignee, transferee and mortgagee shall have the right to further transfer or assign its interest. Each such assignee, transferee, mortgagee and pledgee shall have all of the rights (but none of the obligations) of Creditor under this Agreement, and Obligor hereby acknowledges notice of Creditor's intended assignment of Creditor's interest in this Agreement and, upon such assignment, Obligor agrees not to assert against any of such transferee, assignee, mortgagee or pledgee any defense, claim, counterclaim or set-off that Obligor may have against Creditor, whether arising under this Agreement, transaction or otherwise.  Any assignee of Creditor's rights under this Agreement shall be considered a third party beneficiary of all of Obligor's representations, warranties and obligations hereunder to Creditor.  Obligor agrees that after receipt by Obligor of written notice of an assignment from Creditor or from Creditor's assignee, all periodic installments and other amounts which are then and thereafter due under this Agreement shall be paid unconditionally to such assignee at the place of payment designated in such notice.   Obligor acknowledges that any assignment of Creditor's interest would neither materially change the Obligor's obligations hereunder nor materially increase the burden or risk imposed on the Obligor under this Agreement.  Obligor further acknowledges that an assignment by the Creditor of its interest hereunder will be permitted even if the assignment would be deemed to materially affect the Obligor's interest.

**L. License and Registration Fees.** Obligor agrees to title and register the Vehicle(s) and/or Equipment with the appropriate Department of Motor Vehicles within 30 days of the date of this Agreement listing Creditor as first lienholder and having said title and/or proof of lien forwarded to Creditor.  **FAILURE TO PROVIDE SATISFACTORY PROOF OF TITLE AND REGISTRATION SHALL CONSTITUTE AN EVENT OF DEFAULT AND MAY RESULT IN THE REPOSSESSION OF**

**THE COLLATERAL BY CREDITOR AND THE IMPOSITION OF PENALTIES AND FEES AT A RATE OF $25.00 PER DAY.**

**M. Performance.** Obligor covenants and agrees at all times to keep the Vehicle(s) and/or Equipment free and clear of all levies, liens and encumbrances, and to pay all charges, taxes and fees that may now or hereafter be imposed upon the ownership, sale, purchase, possession or use of the Vehicle(s) and/or Equipment (except taxes on or measured by Creditor's income) and shall give Creditor immediate written notice of any of the foregoing and hereby indemnifies Creditor against any loss caused thereby. If Obligor shall fail to duly and promptly perform any of its obligations under this Agreement with respect to the Vehicle(s) and/or Equipment, Creditor may, at its option, but without the duty to do so, perform any act or make any payment, which Creditor deems necessary for the maintenance and preservation of the Vehicle(s) and/or Equipment and Creditor's title thereto, including payments for satisfaction of liens, repairs, taxes, fines, levies and insurance. All sums so paid or incurred by Creditor, together with interest thereon at 12 percent per annum, and all reasonable legal fees incurred by Creditor in connection therewith, shall be additional rent under this Agreement and payable by Obligor to Creditor on demand. The performance of any act or payment by Creditor as aforesaid shall not be deemed a waiver or release of any obligation or default on the part of Obligor, all of Creditor's remedies being cumulative.

**N. Irrevocable Nature of Agreement; Limited Prepayment Right. THIS AGREEMENT IS IRREVOCABLE AND MAY NOT BE CANCELED, TERMINATED OR REVOKED BY OBLIGOR DURING THE TERM HEREOF FOR ANY REASON WHATSOEVER.** Obligor agrees that this Agreement is irrevocable for the Term, that Obligor's obligations under this Agreement are absolute and unconditional and shall continue without abatement and regardless of any disability of Obligor to use the Vehicle(s) and/or Equipment or any part thereof because of any reason including, but not limited to war, act of God, governmental regulations, strike, loss, damage, destruction, obsolescence, failure of or delay in delivery, failure of the Vehicle(s) and/or Equipment to operate properly, termination by operation of law or any other cause. Obligor further agrees that it shall have no right to prepay its obligations hereunder, in whole or in part, and hereby unconditionally waives any right of prepayment it may have under applicable law except that Obligor shall have a right to prepayment if no event of default under this Agreement or any other agreement between Obligor and Creditor or its affiliates has occurred and at least 12 monthly payments have been made as scheduled and Obligor has paid all outstanding amounts and has paid an additional Prepayment Penalty calculated as follows:

| Prepayment Penalty Rate | | | | |
|---|---|---|---|---|
| Months Paid | Article 1B Term | | | |
| | 84 months + | 72-83 months | 60-71 months | 48-59 months | Up to 47 months |
| 12-24 | 5% | 5% | 5% | 5% | 5% |
| 25-36 | 4% | 4% | 3% | 3% | 3% |
| 37-48 | 3% | 3% | 2% | 1% | |
| 49-60 | 2% | 2% | 1% | | |
| 61-72 | 1% | | | | |

Prepayment Penalty = Unpaid amount of the Advance multiplied by the Prepayment Penalty Rate.

**O. Power of Attorney.** Obligor hereby irrevocably appoints Creditor as Obligor's attorney-in-fact to execute, apply, amend, file, or take any reasonably necessary action to confirm or perfect Creditor's security interest in the Vehicle(s) and/or Equipment.

**P. Agreement to Replace Lost or Misplaced Documents and to Correct Misstated or Inaccurate Documents.** Regardless of the reason for any loss, misplacement, or inaccuracy in any document evidencing and/or securing this Agreement, Obligor agrees to execute and/or initial and deliver any and all "Replacement Documents" as defined in this paragraph. Obligor agrees to deliver to Creditor any documents Creditor deems necessary to replace or correct the lost, misplaced, misstated or inaccurate

document(s). The documents Creditor requests Obligor to execute and/or initial and deliver pursuant to this paragraph shall hereinafter be referred to as "Replacement Documents". Obligor agrees to deliver the "Replacement Documents" within 10 (ten) days after receipt by Obligor of a written request from Obligor for them.

Q. **Continuing Right to Obtain Credit Reports.** Obligor agrees that Creditor may obtain Obligor's credit report, credit score or other consumer report for connection with continuation of the extension of credit described in this Agreement, collection of amounts owed under this Agreement and enforcement of this Agreement.

## ARTICLE 3 – INSURANCE

A. **Physical Damage and Liability Insurance.** Obligor shall, at its expense, keep the Vehicle(s) and/or Equipment fully insured in favor of Creditor against loss, fire, theft, damage or destruction from any cause whatsoever in an amount not less than the full replacement cost of the Vehicle(s) and/or Equipment without consideration for depreciation. Obligor shall also provide such additional insurance against injury, loss or damage to persons or property arising out of the use or operation of the Vehicle(s) and/or Equipment as is customarily maintained by the owners of like property, with companies satisfactory to Creditor. Each policy shall provide that, as to the interest or coverage of Creditor or Creditor's assignee, the insurance afforded thereby shall not be suspended, forfeited, or in any manner prejudiced by any default or by any breach of warranty condition, or covenant on the part of Obligor. Creditor, at its option, may apply any proceeds of such insurance to replace or repair such Vehicle(s) and/or Equipment and/or to Obligor's obligations hereunder. Obligor also shall carry public liability insurance, both personal injury and property damage covering the Vehicle(s) and/or Equipment. All such insurance shall be in form, issued by such insurance companies and be in such amounts as shall be satisfactory to Creditor, and shall provide that losses, if any, shall be payable to Creditor and Creditor's assignee as "loss payee", and all such liability insurance shall include Creditor and Creditor's assignee as an "additional insured." Obligor shall pay the premiums for such insurance and deliver to Creditor satisfactory evidence of the insurance coverage required hereunder. Each insurer shall agree, by endorsement upon the policy or policies issued by it or by independent instrument furnished to Creditor, that it will give Creditor at least ten (10) days prior written notice of the effective date of any alternation or cancellation of such policy, and that Creditor's coverage under such policy shall not be affected by any default, misrepresentation or other breach by Creditor or Obligor under this Agreement or such policy.

B. **Attorney-in-Fact.** Obligor hereby irrevocably appoints Creditor as Obligor's attorney-in-fact to make claim for, receive payments of and execute and endorse all documents, checks or drafts received in payment for loss or damage under any such insurance policy. In any event, Obligor shall be liable for any loss, damage, expense or costs suffered or incurred by Creditor relating to or in any manner pertaining to this Agreement, the Vehicle(s) and/or Equipment or the use or operation of the Vehicle(s) and/or Equipment.

C. **Failure to Maintain Insurance.** In the event Obligor fails to procure and maintain the required insurance or provide evidence of such insurance, such failure shall be deemed to be a material default hereunder and the Vehicle(s) and/or Equipment shall be immediately returned to Creditor. Creditor, at its sole discretion, and in addition to any other remedy, may impose and collect liquidated damages of $150 per day for each day that Obligor has possession of the Vehicle(s) and/or Equipment and is without required insurance. In addition, and not as an alternative to such liquidated damages, Creditor may, at Creditor's option, purchase insurance (or place the Vehicle(s) and/or Equipment on an existing policy) at a cost to Obligor of $150 per day (until satisfactory evidence that Obligor has procured and currently maintains the required insurance is provided to Creditor), to protect Creditor's interests. This insurance need not protect Obligor's interests. The coverage that Creditor purchases or maintains may not pay any

claim by Obligor or any claim that is made against Obligor. Creditor has no obligation to purchase such insurance and Creditor's purchase does not forgive any default or otherwise modify the Obligor's obligations, including the obligation to maintain insurance.

**D. Indemnification and Hold Harmless**. In the event that Obligor for any reasons fails to procure and maintain required insurance, the Obligor agrees to defend, indemnify (that is, Obligor will pay Creditor) and hold Creditor (including its parent company, affiliates, subsidiaries, officers, directors and employees) harmless for any and all losses, damages, claims, injuries and expenses (including attorneys' fees, costs and disbursements) that arise from or relate to this Agreement, or from the Obligor's use or possession of the Vehicle(s) and/or Equipment. Obligor's agreement to indemnify Creditor and hold Creditor harmless will survive termination of this Agreement and repossession of the Vehicle(s) and/or Equipment. It is the intention of the parties to transfer all liability from Creditor to Obligor whether the liability is caused in whole or in part by Creditor, Obligor or both. Obligor's obligation to defend, indemnify and hold harmless Creditor, shall in no manner be construed to limit or relieve Obligor's obligation to provide the insurance coverage required herein.

## ARTICLE 4 – RISK OF LOSS

Obligor shall bear the entire risk of loss, theft, destruction of or damage to the Vehicle(s) and/or Equipment or any part thereof from any cause whatsoever during the term of this Agreement and shall not be relieved of its liabilities under Article 1 hereof or any other obligation hereunder because of any such occurrence. In the event of damage to any item of the Vehicle(s) and/or Equipment, Obligor, at its sole expense and at the option of Creditor, shall immediately place the same in good condition and repair. If Creditor determines that any item of Vehicle(s) and/or Equipment is lost, stolen or destroyed or damaged beyond repair, Obligor, at its sole expense and at the option of Creditor shall pay Creditor in cash (in addition to any other amount due hereunder) the unpaid balance of the total periodic installments for the unexpired term hereof attributable to such Vehicle(s) and/or Equipment.

## ARTICLE 5 – DEFAULT

As used in this Agreement, the term "Event of Default" shall mean any one or more of the following:

(a) the failure by a Obligor to make any payment when due hereunder.

(b) the failure by a Obligor to observe or perform (i) any other agreement or obligation to be observed or performed hereunder or under any agreement, document or instrument delivered to Creditor by or on behalf of any Obligor or otherwise relating to any of the Indebtedness (collectively, the "Other Documents"), or (ii) any other obligation of a Obligor to Creditor;

(c) any representation or warranty made by or on behalf of any Obligor in this Agreement or in any of the Other Documents shall at any time prove to have been incorrect or untrue when made;

(d) the making by a Obligor of any misrepresentation to Creditor or the failure on the part of a Obligor to disclose to Creditor any material fact in connection with this Agreement or otherwise, either contemporaneously herewith or at any time prior or subsequent to the execution hereof;

(e) the breach by a Obligor of any warranty contained herein or in any of the Other Documents, including, without limitation, Obligor's failure to obtain or maintain any insurance required by Creditor hereunder;

(f) any default in the payment of any indebtedness owed to any individual or entity other than Creditor, or any default in the performance or observance of the terms of any agreement, document or instrument

pursuant to which such indebtedness was created, secured or guaranteed, the effect of which default is to cause or permit the holder of any such indebtedness to cause the same to be due prior to its stated maturity (whether or not such default is waived by the holder thereof);

(g) the failure of a Obligor to pay, withhold, collect or remit when asserted or due any tax, assessment or other sum payable with respect to the Vehicle(s) and/or Equipment or any security for any of the Indebtedness (including, without limitation, any premium on any insurance policy with respect to any of the Vehicle(s) and/or Equipment or any security for any of the Indebtedness, or any insurance policy assigned to Creditor as security for any of the Indebtedness), or the making of any tax assessment against any Obligor by the United States or any state or local government;

(h) the entry of a judgment against a Obligor or any attachment, levy or execution against any property of a Obligor, or the condemnation or seizure of any part of any property of a Obligor by any governmental authority or court at the insistence of such governmental authority;

(i) the death of a Obligor, if an individual, or the death of any individual member of a Obligor, if a partnership or joint venture;

(j) the change in control, management, ownership or operations of a Obligor, or the suspension of the usual business of a Obligor, or the dissolution, liquidation or other termination of existence of a Obligor, or the adoption of any resolution for the dissolution, liquidation or other termination of existence of a Obligor, or the sale of material assets of an Obligor;

(k) the failure of a Obligor (or any admission in writing by a Obligor of its inability) to generally pay its debts as they become due or the insolvency or business failure of a Obligor;

(l) the filing of an application for appointment of trustee, custodian or receiver for a Obligor or of any part of a Obligor's property, or an assignment for the benefit of creditors by a Obligor, or the making or sending of notice of any intended bulk transfer by a Obligor;

(m) the filing of a petition in bankruptcy by or against a Obligor, or the commencement by or against a Obligor of any proceeding under any bankruptcy or insolvency law or statute, or any law or statute, relating to the relief of debtors or arrangement of debt, readjustment of indebtedness, reorganization, receivership or composition, or the extension of indebtedness; or

(n) such a change in the condition or affairs (financial or otherwise) of a Obligor as shall, in the sole opinion of Creditor increase Creditor's risk with respect to this Agreement, the Vehicle(s) and/or Equipment or any of the Indebtedness or any security therefor.

Upon the occurrence of an Event of Default, then, at Creditor's option, and at any time, the entire unpaid total periodic installments for the balance of the Term hereof plus all outstanding fees and assessments shall be at once due and payable and/or Creditor may, without demand or legal process, terminate this Agreement and enter upon the premises where the Vehicle(s) and/or Equipment is located, take possession of and remove same, and exercise any one or more of the following rights and remedies, without liability to Obligor therefor and without affecting Obligor's obligations hereunder: (i) sell, lease, or otherwise dispose of the Vehicle(s) and/or Equipment or any part thereof at one or more public or private sales, agreements or other dispositions, at wholesale or retail, for such consideration, on such terms, for cash or on credit, as Creditor many deem advisable, on at least ten (10) days' prior notice to Obligor of any public sale or of the time after which private sale, agreement or other disposition may be made (which notice Obligor acknowledges is reasonable); and/or (ii) retain the Vehicle(s) and/or Equipment or any part thereof, crediting Obligor with the then reasonable rental value thereof for the balance of the Term of this Agreement, and/or (iii) require Obligor to assemble all Vehicle(s) and/or Equipment at Obligor's sole expense, for Creditor's benefit, at a place reasonably designated

by Creditor,  and/or (iv) pursue any other remedy granted by any existing or future document executed by Obligor or by law.

Obligor agrees to pay all Creditor's expenses, including (but not limited to) the costs of repossessing, storing, repairing and preparing Vehicle(s) and/or Equipment for sale or agreement, commissions payable in connection with any such sale or agreement, and reasonable attorney's fees if an attorney shall be consulted.  The net proceeds realized from any such sale, agreement or other disposition or the exercise of any other remedy, and after payment of all expenses (which amount shall be retained by Creditor), shall be applied toward payment of the discounted unpaid periodic installment payments hereunder through the end of the Term of the Agreement and any other amounts due hereunder, with Obligor to remain liable for any deficiency.   Any amount due Creditor under this Article 5 shall be deemed liquidated damages for the breach hereof and not a penalty.  All rights and remedies of Creditor shall be cumulative and not alternative and are in addition to any other remedies provided by law.  Creditor's failure to exercise or delay in exercising any right or remedy shall not be construed as a waiver thereof, nor shall a waiver on one occasion be construed to bar the exercise of any right or remedy on a future occasion.  In addition, to the extent permitted by applicable law, Obligor also hereby waives any rights now or hereafter conferred by statute or otherwise which may require Creditor to sell, lease or otherwise use any Vehicle(s) and/or Equipment in mitigation of Creditor's damages or which may otherwise limit or modify any of Creditor's rights or remedies.

## ARTICLE 6 – SECURITY DEPOSIT

A "Security Deposit" of $0.00 or any amount stated in an Exhibit A executed after the date of this Agreement shall be paid by Obligor prior to Creditor's acceptance of this Agreement.  In the event the Term of this Agreement does not commence for any reason whatsoever, the Security Deposit shall be retained by Creditor not as a penalty but as liquidated damages to cover Creditor's administrative expenses in processing the application for this Agreement. Otherwise, the Security Deposit will be applied to the first and last scheduled payments under this Agreement at the time such payments are due.

## ARTICLE 7 – LIQUIDATED DAMAGES

Whenever any periodic installment or other amount payable to Creditor by Obligor hereunder is not paid within ten (10) days of such payment's due date, Obligor agrees to pay Creditor, on demand, as liquidated damages and not as a penalty; (a) with respect to payments, an administrative fee equal to six cents ($.06) for each one dollar ($1.00) of such delayed periodic payment, or the maximum amount permitted under applicable law, whichever is less, and (b) with respect to periodic payments overdue for more than thirty (30) days and all other amounts payable to Creditor by Obligor hereunder (including accelerated amounts due if Obligor is in default), a late charge calculated at the rate of 18% per annum on such overdue amount, or the maximum amount permitted under applicable law, whichever, is less, from the date such payment is due until the date such payment is made in full to Creditor.  Such amount(s) shall be payable in addition to all amounts payable by Obligor as a result of exercise of any of the remedies herein provided.  Obligor agrees to also reimburse Creditor for any expenses (including Creditor's attorneys' fees and costs) arising out of or caused by enforcement of this Agreement.

## ARTICLE 8 – TERMINATION AND FURTHER ASSURANCES

Obligor agrees that upon expiration of this Agreement it shall pay promptly all costs, expenses and obligations of every kind and nature relating to the Vehicle(s) and/or Equipment which may arise or become due during the Term of this Agreement, whether or not specifically mentioned herein.  No periodic installment or other sums payable by Obligor pursuant to this Agreement shall be subject to set-off, deduction, counterclaim, abatement, recoupment, or reduction, nor shall this Agreement terminate, nor shall Obligor be entitled to any credit against such periodic installment or other sums for any reason whatsoever, including, but not in any way limited to, any damage to or destruction of the Vehicle(s) and/or Equipment or any item thereof, any limitation, restriction,

deprivation or prevention of, or any interference with Obligor's use of the Vehicle(s) and/or Equipment or any item thereof, whether the sale shall be lawful or unlawful, any dispossession of Obligor from the Vehicle(s) and/or Equipment or any item thereof by title paramount or otherwise, the requisition or taking by statute or by exercise of the power of eminent domain or other governmental authority or otherwise, or by injunction or by any private person, of the Vehicle(s) and/or Equipment or any item thereof, the prohibition of Obligor's business in whole or in part, whether pursuant to law or otherwise or any reason whether similar or dissimilar to the foregoing.

## ARTICLE 9 – CREDITOR'S SET OFF, CROSS COLLATERAL, CROSS DEFAULT

In the event that the parties hereto have entered into any separate agreement(s), note(s), or lease(s) whereby Obligor has any financial obligation to Creditor, or any of Creditor's affiliated companies, Creditor retains the right of set off for any monies due and owing Creditor by Obligor on account of this Agreement with respect to any other separate agreements, notes or leases, including any advance payments made or security deposits made by Obligor and held by Creditor. All payments made by Obligor shall be applied to the oldest debt first, whether on account of this Agreement or any other indebtedness, including parts, shop or repair invoices owed by Obligor to Creditor or to any related or affiliated companies. In order to induce Creditor to make the Advance described in this Agreement, Obligor agrees that all property covered or acquired by Obligor or Obligor's assignor under presently existing or hereinafter created separate agreements, note(s), or lease(s) between Creditor and Obligor or Obligor's assignor or with funds provided by Creditor to or on behalf of Obligor or Obligor's assignor ("Additional Collateral") shall secure the payment and performance of all of Obligor's liabilities and obligations to Creditor of every kind and character, whether joint or several, direct or indirect, absolute or contingent, due or to become due, and whether under presently existing or hereafter created agreement(s), note(s) or lease(s), including, but not limited to, obligations under this Agreement. Obligor grants Creditor a security interest in all Collateral and Additional Collateral and such security interest shall not be terminated in whole or in part until and unless all indebtedness of every kind, due or become due, owed to Creditor by Obligor is fully paid and satisfied and the terms of every agreement, note, and lease have been fully performed by Obligor. It is further agreed that Creditor is to retain Creditor's security interest in all property covered by all agreement(s), note(s), and lease(s) held or acquired by Creditor, as security for payment and performance under each such agreement, note, and lease, notwithstanding the fact that one or more of such agreement(s), note(s), or lease(s) may become fully paid.

An Event of Default under this Agreement shall constitute a default under any other such separate agreement(s), note(s) or lease(s) whereunder Obligor has a financial obligation to Creditor, or any of its affiliated companies.

## ARTICLE 10 – INDEMNITY

Obligor shall and does hereby indemnify and save Creditor, its directors, officers, employees, agents, servants, successors and assigns, harmless from any and all liabilities (including, without limitation, negligence, tort and strict liability), damages, expenses, claims, actions, proceedings, judgments, settlements, losses, liens and obligations (each, an "Indemnified Claim"), including (without limitation) counsel fees and costs, arising out of the ordering, purchase, delivery, rejection, non-delivery, ownership, selection, possession, financing, operation (regardless of where, how and by whom operated), control, use, condition (including but not limited to latent and other defects, whether or not discoverable by Obligor), maintenance, delivery, transportation, storage, repair, return or other disposition of the Vehicle(s) and/or Equipment, any claims arising under federal, state or local environmental protection and hazardous substance clean up laws and regulations and any claims of patent, trademark or copyright infringement or, in the event that Obligor shall be in default hereunder, arising out of the condition of any item of Vehicle(s) and/or Equipment sold or disposed of after use by Obligor, including (without limitation) claims for injury to or death of persons and for damage to property. The indemnities and obligations herein provided shall continue in full force and effect notwithstanding the expiration, termination or cancellation of this Agreement for any reason whatsoever and irrespective of whether Creditor ever accepts this Agreement. Obligor shall give Creditor prompt written notice of any Indemnified Claim and, at Creditor's sole

option, shall defend Creditor against any Indemnified Claim at Obligor's sole expense with counsel selected by Creditor.  Obligor is an independent contractor and nothing contained herein shall authorize Obligor or any other person to operate any item of Vehicle(s) and/or Equipment so as to incur any liability or obligation for or on behalf of Creditor.

## ARTICLE 11 – GENERAL

A. **Beneficiaries.** The Creditor and Obligor agree that this Agreement shall inure to the benefit of, and be binding upon the parties hereto, their successors, assigns, transferees and their heirs, executors, administrators and legal representatives.

B. **Change in Legal Ownership.** Obligor agrees to provide written notice to Creditor of any change in its ownership structure and to provide copies of any and all documents evidencing such change thirty (30) days prior to the effectiveness of such change. Creditor reserves the right to terminate the Agreement and take possession of the Vehicle(s) and/or Equipment upon a change in the ownership structure of Obligor which is not acceptable to Creditor.

C. **Entire Agreement.** Except as provided in an Exhibit attached pursuant to <u>Article 1</u>, this Agreement constitutes the entire agreement between the parties, and cannot be amended or altered in any manner except in writing signed by both parties. No oral modifications shall be permitted or recognized.

D. **Notice.** Any notice to a party hereunder shall be deemed given when mailed to said party by certified mail, return receipt requested at its address set forth herein or such other address as either may designate for itself in such notice to the other.  Whenever the sense of this Agreement requires, words in the singular shall be deemed to include the plural and words in the plural shall be deemed to include the singular. If more than one Obligor is named herein the liability of each shall be joint and several. This Agreement (along with any separate promissory note or instrument executed by Obligor relating to this Agreement) constitutes the entire mutual understanding of the parties regarding the within subject matter and may not be modified except in writing, signed by the party against whom such modification is asserted.  Upon the request of Creditor, Obligor shall at any time and from time to time after the execution and delivery of the Agreement, execute and deliver such further documents and do such further acts as Creditor may reasonably request in order fully to effect the purposes of this Agreement, and any assignment hereof. Obligor hereby authorizes Creditor, at its option and as contemplated by Section 9-509 of the UCC or otherwise, to file financing statements covering the Vehicle(s) and/or Equipment signed only by Creditor on a reproduction of this Agreement, and agrees to pay Creditor the actual fee for such filing, recording or stamp fees or taxes arising from the filing or recording of any such instrument or statement.  IN THE EVENT THE INTEREST RATE CHARGED UNDER THIS AGREEMENT EXCEEDS THE MAXIMUM RATE OF INTEREST ALLOWED BY APPLICABLE LAW, THEN THE EFFECTIVE RATE OF INTEREST HEREUNDER SHALL BE AUTOMATICALLY REDUCED TO THE MAXIMUM LAWFUL RATE ALLOWABLE UNDER THE APPLICABLE USURY LAWS.

E. **Waiver.** No agent or employee of the seller of the Vehicle(s) and/or Equipment is authorized to bind Creditor to this Agreement, to alter or waive any term or condition hereof, or to add any provision hereto, notwithstanding any compensation or benefit that may be given by Creditor to seller or any agent or employee of seller.

F. **Captions.** Captions, headings and arrangements used in this Agreement are for convenience only and do not in any way affect, limit, amplify, or modify the terms and provisions hereof.

G. **GPS:  Obligor agrees to allow Creditor to equip the Vehicle(s) and/or Equipment with a Global Positioning System ("GPS") unit or other location tracking system that will allow the Vehicle(s) and/or Equipment to be monitored by Creditor.  Obligor is hereby notified of the tracking device**

and the tracking.  Any tampering with the GPS unit or other location tracking system will cause a default under the Agreement.

H. **Construction; Jurisdiction; Waiver of Jury Trial.** The substantive laws of the State of New York shall govern the validity, construction, enforcement, and interpretation of this Agreement.  Obligor hereby consents to the personal jurisdiction of the state and federal courts located in the State of New York in connection with any controversy relating to this Agreement, waives any argument that venue in such forums is not convenient and agrees that any litigation instigated by the Obligor against the Creditor in connection herewith shall be venued in either the New York State Court in Nassau County, New York or the United States District Court for the Southern District of New York. THE OBLIGOR AND CREDITOR EACH WAIVE THEIR RESPECTIVE RIGHTS TO A TRIAL BY JURY OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF OR RELATED TO THIS AGREEMENT, THE OTHER DOCUMENTS, OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY, IN ANY ACTION, PROCEEDING OR OTHER LITIGATION OF ANY TYPE BROUGHT BY ANY OF THE PARTIES AGAINST ANY OTHER PARTY OR PARTIES, WHETHER WITH RESPECT TO CONTRACT CLAIMS, TORT CLAIMS, OR OTHERWISE.  THE OBLIGOR AND CREDITOR EACH AGREE THAT ANY SUCH CLAIM OR CAUSE OF ACTION SHALL BE TRIED BY A COURT TRIAL WITHOUT A JURY.  WITHOUT LIMITING THE FOREGOING, THE PARTIES FURTHER AGREE THAT THEIR RESPECTIVE RIGHT TO A TRIAL BY JURY IS WAIVED BY OPERATION OF THIS SECTION AS TO ANY ACTION, COUNTERCLAIM OR OTHER PROCEEDING WHICH SEEKS, IN WHOLE OR IN PART, TO CHALLENGE THE VALIDITY OR ENFORCEABILITY OF THIS AGREEMENT OR THE OTHER DOCUMENTS OR ANY PROVISION HEREOF OR THEREOF.  THIS WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS TO THIS AGREEMENT AND THE OTHER DOCUMENTS.

**IN WITNESS WHEREOF**, the names of Advantage Funding Commercial Capital Corp., and **LGE ORGANIC LLC** have been hereunto subscribed by the respective persons or officers thereunto duly authorized.

**Advantage Funding Commercial Capital Corp.**

By: _____

Its: ___ Milton Wilcher, Funding Manager ___

DATE: _August____ 15__ , 2016

**LGE ORGANIC LLC**

___ LGE Organic Lle. ___
Obligor's Name

By:   X _____
Printed Name: ___ MOHAMAD S. KHAN ___
Its: ___ MEMBER ___
Address: ___ 3 MILFORD STREET ___
             ___ CHARLESTON, SC 29405 ___

## MANAGERS CERTIFICATE

The undersigned, constituting a manager of <u>LGE ORGANIC LLC</u> (the "Company"), in connection with the chattel mortgage evidenced by that certain chattel mortgage dated 07/26/16 (the "Chattel Mortgage") by and between the Company and <u>Advantage Funding Commercial Capital Corp.</u> ("Obligee"), hereby certifies to Obligee that:

1. I am a duly elected Manager of the Company. The Company is authorized to enter into, and to execute, deliver and perform its obligations under the Chattel Mortgage and the other documents executed in connection therewith (collectively, the "Chattel Mortgage Documents").

2. Each of the following persons is duly authorized to execute and deliver the Chattel Mortgage Documents, holds the position set forth next to his name and set forth next to such position is a specimen of his true signature:

| Name | Title | Signature |
|------|-------|-----------|
| MOHAMAD S. KHAN | MEMBER | X |

3. Any and all consents of the Managers/Members of the Company required by the Company's operating agreement to be obtained for the execution, delivery, and performance of the Chattel Mortgage Documents have been obtained and are in full force and effect.

4. No suit or proceeding for the dissolution or liquidation of the Company has been instituted or is now threatened.

IN WITNESS WHEREOF, the undersigned has executed this Certificate this 10 day of August 2016.

_____
Witness Name & Position

John Chadwick FEI mgr.



# Advantage Funding
### Transportation Financing & Leasing Specialists

**DELIVERY & ACCEPTANCE CERTIFICATE**
**CERTIFICATE OF CUSTOMER USE**

July 25, 2016

XXXX-41007

This Delivery & Acceptance Certificate / Certificate of Customer Use is being delivered by **LGE ORGANIC LLC** ("Customer") between Customer and **ADVANTAGE FUNDING COMMERCIAL CAPITAL CORP.** or any affiliate or related entity (with its successors and assigns, "Creditor"). Unless otherwise defined in this Certificate, each capitalized term that is used herein has the meaning given it in the Agreement.

**Asset Description:** 2017 UTILITY VS2RA W/ THERMO KING REFRIGERATION UNIT

**S/N:** 6001207102 **VIN:** 1UYVS2534H6952329

2017 UTILITY VS2RA W/ THERMO KING REFRIGERATION UNIT

**S/N:** 6001208491 **VIN:** 1UYVS2530H6952330

Customer hereby represents and warrants as follows:

1. Customer has acquired the Asset for use in its business and not for use by a third party or for use in the business of a third party.

2. Customer acknowledges that he understands the terms of the Loan and Security Agreement, has accepted delivery of the Asset and authorizes Creditor to pay proceeds to the selling vendor / dealer.

3. By signature below customer hereby accepts unconditionally and irrevocably the Asset.

4. With the delivery of this document to Creditor, customer acknowledges and agrees that customer's obligations to Creditor and its assignee become absolute and irrevocable and customer shall be forever estopped from denying the truthfulness of the representations made in this document. Customer affirms that it has no defenses or counterclaims against Creditor and if the Loan and Security Agreement is assigned by Creditor, customer will not assert against the assignee any defense, claim, setoff or counterclaim which customer may have against Creditor.

Customer acknowledges and agrees that Creditor has entered into the Agreement in reliance on the Certificate and on the Customer's use and/or control of the Asset. The representations and warranties set forth above shall be deemed to be incorporated in the Agreement, and a breach of any of them shall constitute an event of default under the agreement.

**If you have a preferred mailing address, e-mail address and/or contact phone number please indicate below.

*P.O. Box 177 Hiram GA. 3014.*
Preferred Mailing Address

XXXXXXXX@XXX.XXX

XXX-XXX-XXXX

Preferred E-mail Address

Preferred Contact Phone Number

*Mohamed Khan*

Customer:  **LGE ORGANIC LLC**

By:  X *[signature]*

Date of Acceptance: *8/10*, 2016

Name:  **MOHAMAD S. KHAN, MEMBER**



## Advantage Funding
#### Transportation Financing & Leasing Specialists

**3 Dakota Drive, Suite 210**
**Lake Success, NY 11042**

### EXTENSION AND MODIFICATION AGREEMENT–LOAN

This agreement made and entered into this **3 May 2019**, by and between **Advantage Funding** and **LGE Organic LLC.**

Whereas, Debtor desires to have the schedule of payments modified and the contract term extended as hereinafter set forth,

Now, therefore, in consideration of Lender's agreement to extend and modify the contract terms as follows, and for other good and valuable consideration, receipt of which is hereby acknowledged, it is agreed by and between the parties:

**Loan Numbers-XX -41007-60 DAY EXTENSION**
Payments currently due for **3/15/2019 and 4/15/2019** will be deferred to follow the current maturity. The current maturity date of **8/15/2022 will be deferred until 10/15/2022**

**Next payment due after extension:** Due date for next payment: **5/15/2019**
**Payment Amount-$2,370.00**

**Total extension payment due: $1,158.75 (To be deferred to the end of the contract)**

Except as amended or modified hereby, all terms, conditions, and covenants of the agreement shall be and remain in full force and effect.

By signing this Extension Agreement, you agree to and accept the revised payment terms and acknowledge the contract terms as indicated are correct.

**Agreed and Accepted:**

**Creditor: Advantage Funding**
X _Julia Pascoe_

**Advantage Funding**

Date: _6/18/19_

X _Mohamad Khan_
**Mohamad Khan**
**LGE Organic LLC**

Date: _05/31/2019_

X _____

Date: _____

X _____

Date: _____

**EXHIBIT 2**

**Advantage Funding**
Transportation Financing & Leasing Specialists

3 Dakota Drive, Suite 210
Lake Success, NY 11042

**PERSONAL GUARANTY**

Guaranty made and delivered on _August 10_, **2016** by the undersigned party **MOHAMAD S. KHAN** hereto, herein called "Guarantor", to **Advantage Funding Commercial Capital Corp.** (herein called "Creditor"), on behalf of **LGE ORGANIC LLC** (herein called "Debtor").

In order to induce Creditor to grant to Debtor such credit (which term shall include loans, leases and/or the sale of goods or credit to Debtor) all of which is to the economic benefit or advantage of Guarantor, at such time, in such amounts, on such terms, and with or without security, as Creditor may in its discretion see fit, without notice to or consent from Guarantor, and in consideration thereof, Guarantor hereby unconditionally, absolutely and irrevocably guarantees that irrespective of the genuineness, validity or enforceability of any document relating to such credit or of Debtor's obligations in respect thereof, whether now existing or hereafter arising (herein called "Liabilities") and of the existence, validity or value of any security, Debtor will promptly and fully pay and perform all obligations with respect to the Liabilities or any security therefore, with interest and other charges, when due (whether at maturity or earlier by acceleration or otherwise). Guarantor consents that from time to time, without notice to or further consent from Guarantor and without releasing or affecting its liability hereunder, the time for payment or performance may be extended or accelerated in whole or in part, any security may be exchanged, released, enforced, sold, leased or otherwise dealt with may be canceled, compromised, modified or waived, any other guarantor or surety may be released, and any indulgence may be granted Debtor, as Creditor may in its discretion determine. Guarantor waives and consents to the non-perfection, lapse or disposition of or other dealing with any security interest or liens at any time granted to Creditor as security for any of the Liabilities. No payments by Guarantor except payment in full of the Liabilities shall entitle Guarantor to be subrogated to any of the rights of Creditor, other than as waived in the next paragraph below. Guarantor shall have no right of reimbursement or indemnity whatsoever and no right of recourse to or with respect to any assets or property of Debtor or to any security for the Liabilities unless and until the Liabilities have been paid in full, other than as waived in the next paragraph below.

Guarantor hereby unconditionally and irrevocably waives and releases any and all claims [as defined in and under Section 1010(4) of Title United States Code] against Debtor now or hereafter arising out of or related directly or indirectly to any of the obligations of Guarantor under this Guaranty or any liabilities of Debtor to Creditor, including (without limitation) any and all such claims arising from rights of subrogation, indemnity, reimbursement, contribution or set-off of Guarantor against Debtor, whether arising by contract or otherwise.

If any payment received by Creditor from any source on account of the Liabilities is set aside or required to be repaid, whether in any bankruptcy proceeding or otherwise, this Guaranty shall remain in full force and effect (or be reinstated) until Creditor has received and retained full payment of all the Liabilities; and Guarantor agrees to pay any such amount upon demand. Guarantor agrees that it will not transfer any personal assets to any party (except gifts of nominal value) without full and valuable consideration for such transfer. If Debtor or Guarantor shall at any time become insolvent or make a general assignment or if a petition in bankruptcy or any insolvency or reorganization proceeding shall be commenced by, against or in respect of Guarantor or Debtor, any or all of Guarantor's obligations in respect of the Liabilities shall, at the sole option of Creditor, forthwith become due and payable without notice. Guarantor agrees that Creditor may enforce the Liabilities without resorting first to any other right, remedy or security and the Liabilities shall, unless paid in full, survive any repossession of any security, whether or not such action constitutes an election of remedies against Debtor. This Guaranty cannot be terminated or changed orally and no provision hereof may be modified or waived except in writing by Creditor, and it is a guaranty of payment and not one of collection. This Guaranty shall be binding upon Guarantor, jointly and severally if more than one, and its respective heirs, representatives, successors and assigns in favor of Creditor, its successors and assigns.

**GUARANTOR HEREBY WAIVES: PRESENTMENT, NOTICE OF DISHONOR AND PROTEST, NOTICE OF DEFAULT BY DEBTOR, OF SALE OR OTHER DEALING WITH ANY SECURITY AND ANY OTHER NOTICE TO WHICH GUARANTOR MIGHT OTHERWISE BE ENTITLED.**

**EXHIBIT 3**



# Advantage Funding
### Transportation Financing & Leasing Specialists

GUARANTOR HEREBY FURTHER WAIVES: JURY TRIAL, THE RIGHT TO INTERPOSE ANY COUNTERCLAIM OR CONSOLIDATE ANY OTHER ACTION WITH AN ACTION ON THIS GUARANTY, AND THE BENEFIT OF ANY STATUTE OF LIMITATIONS AFFECTING ITS LIABILITIES HEREUNDER OR THE ENFORCEMENT HEREOF.

GUARANTOR HEREBY SUBMITS TO THE JURISDICTION AND VENUE OF THE FEDERAL AND STATE COURTS IN THE STATE AND COUNTY OF CREDITOR'S PRINCIPAL PLACE OF BUSINESS LISTED ABOVE, IN ANY ACTION OR PROCEEDING BROUGHT UNDER THIS GUARANTY (IF CREDITOR CHOOSES TO BRING ANY SUCH ACTION OR PROCEEDING IN SUCH JURISDICTION AND VENUE), GUARANTOR AGREES THAT ANY PROCESS, NOTICE OF MOTION OR OTHER APPLICATION TO ANY OF SAID COURTS (OR A JUDGE THEREOF) IN ANY SUCH ACTION OR PROCEEDING SHALL BE SUFFICIENTLY SERVED IF SENT TO GUARANTOR BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED, TO THE ADDRESS SET FORTH BELOW (AND SERVICE SO MADE SHALL BE DEEMED COMPLETE FIVE (5) DAYS AFTER THE SAME HAS BEEN POSTED AS AFORESAID).

THIS GUARANTY SHALL BE GOVERNED BY THE LAWS OF THE STATE OF CREDITOR'S PRINCIPAL PLACE OF BUSINESS LISTED ABOVE, WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAW OR CHOICE OF LAW.

This Guaranty has been duly executed by Guarantor on the date set forth above.

MOHAMAD S. KHAN
(Name of Guarantor)

X _____
(Signature of Guarantor)

3121 HIRAM DOUGLASVILLE HIGHWAY
HIRAM, GA  30141
(Address of Guarantor)

XXX-XX-XXXX
(Social Security Number)

XXX-XXX-XXXX
(Home Telephone Number)

## NOTARY REQUIRED

State of _Ga_

County of _Cobb_

On the _10_ day of _Aug._ , 2016 before me personally came _Mohamad Khan_ , to me known to be the individual(s) described in and who executed the foregoing instrument and acknowledged that _Mohamed Khan_ executed the same.

_____
(Notary Public)

JOHN P. CHADWICK
NOTARY
EXPIRES
GEORGIA
JULY 10, 2017
PUBLIC
COBB COUNTY

### ASSIGNMENT OF PAPER

For valuable consideration, **Sterling National Bank**, a national banking association, and **Advantage Funding Commercial Capital Corp.**, a corporation (herein collectively called the "Seller" and the term "Seller" shall hereafter in this Assignment be deemed to mean and include each of said entities jointly and severally) hereby assigns and transfers to **777 Equipment Finance LLC**, a Delaware limited liability company ("Buyer"), its successors and assigns, all of Seller's right, title and interest in and to the lease, loan and financing documents, including modification and amendment documents, correspondence with Customers and third parties, notices of default and deficiency, legal filings, repossession, warehousing and remarketing agreements and documents, as described on Schedule A hereto (the "Paper").

This Assignment is being delivered pursuant to a certain Portfolio Purchase Agreement dated as of July 31, 2020 ("Purchase Agreement") between Seller and Buyer. Capitalized terms not otherwise defined herein shall have the same meanings ascribed to them in the Purchase Agreement.

Effective as of the date hereof, on the terms and conditions set forth in the Purchase Agreement, Seller hereby sells, conveys, assigns, transfers and delivers to Buyer, and Buyer hereby purchases, acquires and accepts from Seller, all of Seller's right, title and interest in, to and under the Paper.

Effective as of the date hereof, upon the terms and subject to the conditions set forth in the Purchase Agreement, Buyer hereby assumes and agrees to timely pay, discharge and perform in accordance with their terms, all obligations and liabilities of the Seller related to the Paper as the same exist on the Closing Date, and any obligations and liabilities thereunder that arise thereafter.

The Seller agrees that at any time and from time to time, upon the written request of the Buyer and at the expense of the Seller, the Seller will promptly and duly execute and deliver any and all such further instruments and documents and take such further action as the Buyer may reasonably deem desirable in obtaining the full benefits of this Assignment and of the rights and power herein granted.

This Assignment shall be binding upon the Seller and its successors, and shall inure to the benefit of the Buyer, including its successors and assigns.

THIS ASSIGNMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK APPLICABLE TO CONTRACTS MADE AND TO BE PERFORMED THEREIN WITHOUT GIVING EFFECT TO THE PRINCIPLES OF CONFLICT LAWS THEREOF.

**EXHIBIT 4**

IN WITNESS WHEREOF, SELLER AND BUYER HAVE EXECUTED AND DELIVERED THIS ASSIGNMENT OF PAPER
TO BE EFFECTIVE AS OF JULY 31, 2020.

**Sterling National Bank**

By: _____

Name: _Branko Djapic_

Title: _Chief Corporate Development Officer_

**777 Equipment Finance LLC**

By: _____

Name: _Gary Silverhardt_

Title: _CEO_

**Advantage Funding Commercial Capital Corp.**

By: _____

Name: _Branko Djapic_

Title: _Treasurer_

<u>Schedule A to Assignment of Paper</u>

See attached

**PRECEDING PAGES 1 THROUGH 17 REDACTED/DELETED**

| Contract_No | CUST_NAME |
|---|---|
| | **REDACTED** |
| 040-0041007-001 | LGE Organic LLC |
| | **REDACTED** |

**FOLLOWING PAGES 19 THROUGH 32 REDACTED/DELETED**